# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Jerry W. CLIFFT
## Gunner's Mate Third Class (E-4), U.S. Coast Guard

### CGCMG 0349
### Docket No. 1446

### 12 March 2018

General Court-Martial convened by Commander, Coast Guard Atlantic Area.  Tried at Norfolk, Virginia, on 03 November 2015, 11 January 2016, and 14–20 March 2016.

| | |
|---|---|
| Military Judges: | CDR Cassie A. Kitchen, USCG |
| | CAPT Gary E. Felicetti, USCG |
| Appellate Defense Counsel: | Philip D. Cave, Esq. |
| | LCDR Jason W. Roberts, USCG |
| Appellate Government Counsel: | LT Connor B. Simpson, USCG |
| | LCDR Tereza Z. Ohley, USCG |

### BEFORE
### McCLELLAND, JUDGE & BRUBAKER
Appellate Military Judges

BRUBAKER, Judge:

A general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of false official statement in violation of Article 107, Uniform Code of Military Justice (UCMJ); one specification of sexual assault in violation of Article 120, UCMJ; and two specifications of assault and battery in violation of Article 128, UCMJ.  The members sentenced Appellant to confinement for four years, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge.  The Convening Authority approved the sentence as adjudged.

Appellant now asserts the following:

1.  The record is incomplete and: (a) the trial counsel erred by attempting to complete an otherwise incomplete record; (b) the staff judge advocate failed to adequately address allegations in clemency matters of an incomplete record; and (c) because the record was incomplete, the convening authority erred by approving a sentence greater than that available at a special court-martial.

2.  The military judge erred in his instructions regarding consent and trial defense counsel were ineffective for failing to ask for a correct instruction.

3.  The military judge erred by permitting what amounted to a substantial variance between the charged offense and the verdict.[1]

4.  The military judge erred by allowing "profiling evidence," including uncharged misconduct.

5.  The evidence of sexual assault is legally and factually insufficient.

6.  The military judge erred by denying in-camera review of mental health records.

7.  The military judge erred by denying a challenge for cause of one of the members.

8.  The military judge abused his discretion by admitting evidence that a post-assault exam revealed an abrasion within the complaining witness's vagina.

9.  The trial counsel made improper argument.

We have considered issues (6)–(9), raised personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), but conclude they do not warrant discussion or relief. We discuss the remainder and affirm.

## Background

Appellant and his wife, MDBC, had a tumultuous marriage. Following arguments and physical assaults that formed the basis of the Article 128 convictions, MDBC left the marital home. Appellant, acknowledging he had hurt her "both emotionally and physically," implored her to return. (Prosecution Ex. 1 at 1.) When she did, further arguments and violence ensued, ultimately leading to local police responding to the home and a civilian temporary protective order against Appellant.

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

After a judge declined to extend the protective order, Appellant returned home. Over the course of the next few days, he and MDBC engaged in consensual intercourse several times. But on the evening of 21 July 2014, when MDBC awoke to Appellant attempting to initiate sex, she got up and told him no, that her "uterus and everything was hurting and [she] did not want to have sex with him." (R. at 596.)

She left to go to the bathroom. When she returned, Appellant grabbed her and pulled her on top of him, wrapping his arms around her so she could not move. She again repeatedly told him no, that she did not want to have sex, and that she was hurting. Eventually, scared that if she "tried to physically fight him off, he would hurt [her] more," she "rolled over so he could just get it over with" (R. at 598), saying, "Just take me." (R. at 618.) During the intercourse, she then "tried to play along by moving [her] body but [she] couldn't because it hurt," at one point even whispering, "I love you" in his ear. (R. at 598.) She testified that she was in such pain, she was unable to move, so Appellant grabbed her hips and thrusted, causing her to scream in pain. The more she screamed, "the rougher he got." (R. at 599.)

## I. **Incomplete Record**

We first address whether we have a complete record to conduct our review. Appellant raises several issues related to his claim that the transcript is not verbatim and the record of trial is incomplete. While not the paragon of excellence, we find the record substantially complete and thus deny relief.

We review whether a transcript is verbatim and whether a record is complete *de novo*. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014). Each general court-martial must have a complete record of trial. Rule for Courts-Martial (R.C.M.) 1103(b)(2), Manual for Courts-Martial (MCM), United States (2016 ed.). A complete record includes a verbatim transcript, when required, and, *inter alia*, all exhibits received in evidence and appellate exhibits. *Id*. Here, a verbatim transcript was required. R.C.M. 1103(b)(2)(B).[2]

---

[2] The Rule's threshold for a verbatim transcript was amended after Appellant's court-martial, but either version required a verbatim transcript in this case.

The requirement for a verbatim transcript and a complete record does not mean that every omission will render a transcript non-verbatim or a record incomplete. Rather, we assess "whether the omitted material was 'substantial,' either qualitatively or quantitatively." *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982). If substantial, the government must overcome a presumption of prejudice. If not, the record is considered complete. *Id*.

Appellant first asserts that the number of times the transcript indicates "unintelligible" renders it non-verbatim. Indeed, the transcript indicates "unintelligible" dozens of times, only a few of which are remedied by the military judge-approved list of errata. While less than optimal, we find that in the context of an over-1,700-page transcript, the omissions are insubstantial. We are able to sufficiently understand what is being said and find the transcript substantially verbatim.

Appellant next asserts the record is incomplete because: (1) the arraignment portion of the transcript was not authenticated; (2) Prosecution Exhibit 4 is incomplete, Appellate Exhibit 67 is missing, and the trial counsel's attempt to supplement the record with an "electronic copy" of each was erroneous; and (3) a government motion to admit evidence under Military Rule of Evidence (M.R.E.) 404(b), Manual for Courts-Martial, United States (2016 ed.) is missing. We consider each in turn.

First, the arraignment portion of the transcript, which was conducted by a different military judge from the rest of the trial, was not authenticated. This is error. R.C.M. 1104(a)(2)(A) ("If more than one military judge presided over the proceedings, each military judge shall authenticate the record of the proceedings over which that military judge presided, except [in the case of substitute authentication.]"). Still, because the unauthenticated portion pertained strictly to a simple arraignment and the subsequent military judge went back through Appellant's rights and elections with him, we conclude that Appellant suffered no prejudice from this omission. Article 59(a), UCMJ; *cf. United States v. Martinez*, 27 M.J. 730, 733 (A.C.M.R. 1988).

Second, in the record of trial as initially docketed, Prosecution Exhibit 4 was incomplete—apparently missing every other page of the original exhibit—and Appellate Exhibit 67 was absent altogether. Accompanying the record was an affidavit from the trial counsel

stating that the original exhibits could not be located, but attaching what she attested were fair and accurate representations. Following Appellant's brief noting the omissions and challenging the trial counsel's attempt to supplement the record, the government formally moved to attach the affidavit and its attachments. Appellant did not file an opposition to the motion, and, having no reason to doubt the trial counsel's attestation, we granted it.

Appellant has not contested the accuracy of the documents the trial counsel attests are copies of Prosecution Exhibit 4 and Appellate Exhibit 67. He previously insisted that this court may not accept affidavits regarding missing or incomplete exhibits and must instead return the record for a certificate of correction. Not so. Rule for Court-Martial 1104(d) provides, "A record of trial found to be incomplete or defective after authentication *may* be corrected to make it accurate. A record of trial *may* be returned to the convening authority by superior competent authority for correction under this rule." (Emphasis added.) A certificate of correction is thus "permissive in nature, merely one method of correcting a record, not the exclusive means." *United States v. Roberts*, 22 C.M.R. 112, 115 (C.M.A. 1956). In our discretion, we may accept an affidavit in lieu of a certificate of correction to ensure a complete and accurate record. *Id.*; *see also United States v. Mosley*, 35 M.J. 693, 695 (N.M.C.M.R. 1992).

We have done so here. We note that both exhibits were of only tangential significance. We are satisfied that we have a complete and accurate record, including these exhibits, and can conduct our review without further formalities.

Third and finally, the government submitted a written motion to admit evidence under M.R.E. 404(b). While colloquy about the motion and the defense answer appear in the record, the government motion itself is absent. Appellant casts this as critical because of his concerns about the use of evidence of uncharged misconduct in general, but the transcript and defense answer to the motion make it plain that the contested portion of the government motion pertained only to a particular past incident on which the government was seeking to present extrinsic evidence. After extensive discussion on the record, the military judge ultimately denied the government motion to present this evidence. We thus find the omission of the government's failed written motion insubstantial. We address Appellant's remaining concerns about purported M.R.E. 404(b) evidence that were not the subject of this motion below.

To sum up, we do not condone these omissions and caution all involved in the creation and authentication of records of trial to exercise greater care. But as we find the totality of omissions insubstantial, the record is complete. *Lashley*, 14 M.J. at 9.[3]

## II. **The Sexual Assault Conviction**

Appellant asserts his sexual assault conviction suffers a variety of fatal ailments, including variance, insufficiency of the evidence, instructional error, and improper admission of evidence. We will consider each of these in turn, but first we lay the groundwork by discussing generally Appellant's offense.

Appellant was charged with one specification of sexual assault by causing bodily harm in that he "commit[ted] a sexual act upon [MDBC], by penetrating [her] vulva with his penis, by causing bodily harm to her, to wit: penetrating the vulva of [MDBC] with his penis, with an intent to gratify the sexual desire of [Appellant] and without the consent of [MDBC]." Charge Sheet. Based on this, the military judge properly instructed the members that to convict Appellant of sexual assault by causing bodily harm, they had to find: (1) that Appellant committed a sexual act upon MDBC by penetrating her vulva with his penis; (2) that he did so by causing bodily harm to MDBC; (3) that he did so without MDBC's consent; and (4) that he did so with an intent to gratify his sexual desire.[4] (R. at 1290–91.)

"The term 'bodily harm' means any offensive touching of another, however slight, including any nonconsensual sexual act . . . ." Article 120(g)(3), UCMJ. "Consent" means:

> a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent.

---

[3] We further reject Appellant's related claims that only a lesser sentence may be approved, that the staff judge advocate failed to adequately address his complaints of an incomplete record, and that the convening authority did not have a complete record available for his consideration.

[4] Statutorily, proving intent to gratify sexual desire is not required when the sexual act includes penetration of the vulva by the penis. Art. 120(g)(1). But here, because the government pleaded it, the military judge instructed on it as an element.

Article 120(g)(8)(A).

A lack of consent "may be inferred based on the circumstances of the offense. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions." Article 120(g)(8)(C), UCMJ.

While the parties' briefs invite us to consider concepts and definitions related to a statutory cousin of sexual assault by causing bodily harm—sexual assault by threatening or placing another in fear—these are distinct offenses. *Compare* Article 120(b)(1)(A), UCMJ *with* Article 120(b)(1)(B), UCMJ. Each has an element that the other does not. Sexual assault by causing bodily harm requires proof of a lack of actual consent to the sexual act; sexual assault by threatening or placing another in fear does not. *United States v. Riggins*, 75 M.J. 78, 84 (C.A.A.F. 2016). Conversely, sexual assault by threatening or placing another in fear requires proof of a "communication or action that is of sufficient consequence to cause a reasonable fear that non-compliance will result in the victim or another person being subjected to the wrongful action contemplated by the communication or action," Article 120(g)(7), UCMJ; sexual assault by causing bodily harm does not.

Evidence an accused placed another in fear may play a role in either theory, but in different contexts. For sexual assault by threatening or placing in fear, the fear is the mechanism by which the perpetrator commits the sexual act—irrespective of consent. In a bodily harm case, on the other hand, evidence of fear may be germane under Article 120's definition of consent to put a lack of resistance or submission into context, but the requirement for a lack of actual consent remains.

Finally—and importantly—submission is not synonymous with actual consent. A plain meaning of "submission" is to "yield to the power or authority of another." Dictionary.com, http://www.dictionary.com/browse/submit (last visited 19 Dec. 2017). Under Article 120, merely yielding to another's power or authority out of fear is distinct from freely agreeing—that is, consenting—to an act. Article 120(g)(8)(A), UCMJ.

With these precepts in mind, we now address Appellant's assertions regarding his sexual assault conviction.

*Variance*

We agree with Appellant that if the government failed to prove a lack of actual consent and the members instead effectively convicted him of the distinct offense of sexual assault by threatening or placing another in fear, that would constitute a fatal variance. *See, generally, United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999) ("A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge."). But there was no such variance here. Appellant was charged with sexual assault by causing bodily harm. As we address in more detail below, the military judge properly instructed the members on this theory and specifically that to convict on this theory, they had to find a lack of consent. The members convicted Appellant of sexual assault by causing bodily harm without exception or substitution. We can presume they followed the law, found a lack of consent beyond a reasonable doubt, and convicted Appellant of precisely the offense with which he was charged. *See United States v. Piolunek*, 74 M.J. 107, 111 (C.A.A.F. 2015) (holding that members are presumed to have followed the judge's instructions and "to be competent to make factual determinations as to guilt.").

*Sufficiency of the Evidence*

We review *de novo* whether there was legally and factually sufficient evidence to support this verdict. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). Evidence is legally sufficient if, "considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day,* 66 M.J. 172, 173–74 (C.A.A.F. 2008) (citing *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner,* 56 M.J. 131, 134 (C.A.A.F.2001) (citations omitted).

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington,* 57 M.J. at 399. "Reasonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Rankin,* 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

Appellant's main premise appears to be that MDBC's uttering the phrase "[j]ust take me" conclusively established actual consent. We disagree. MDBC repeatedly expressed an actual lack of consent by telling him "no" and that she was sore. Only after Appellant had repeatedly refused to take "no" for an answer and wrapped MDBC in his arms so she was unable to move did she say, "Just take me." While the defense, understandably, tried to cast this as a change of mind from no-consent to consent, the members were free to consider the full context of MDBC's testimony along with "[a]ll the surrounding circumstances," Article 120(g)(8)(C), UCMJ, to reach their own conclusion. Drawing every reasonable inference in the prosecution's favor, we find that a reasonable finder of fact could have found the statement akin to "just get it over with," communicating not a freely-given agreement—that is, consent—but mere submission to his power or authority—which is not consent.

Still, the "just take me" comment coupled with MDBC's testimony that she "played along" by moving around, changing positions, and even whispering, "I love you" in Appellant's ear presents a concededly close case as to whether we are convinced beyond a reasonable doubt. However, having considered the evidence presented and that we did not see or hear the witnesses, we are convinced.

While we base this conclusion on our review of the evidence presented as a whole, we highlight a few matters that factor into convincing us. First, while admitting actions that facially would seem to contradict a claim of unconsented sex, MDBC explained that she did not want to

have sex, told Appellant that repeatedly, submitted only because she feared that Appellant would harm her further if she did not, and screamed in pain after intercourse started. We are convinced that this was not a freely-given agreement and that Appellant would not have been reasonable in believing otherwise. Second, MDBC's testimony was partially corroborated by medical evidence of an abrasion on her vagina. Third, attacks on MDBC's credibility were countered with prior consistent statements, including persuasive evidence of her demeanor and statements the day following the sexual assault. We finally note that Appellant initially repeatedly lied to investigators that he did not have *any* sexual contact with his wife during the time in question, supporting the government's argument that this demonstrated a consciousness of guilt. Taken as a whole, we find the evidence legally and factually sufficient.

*Instructions*

Appellant asserts that the military judge provided incomplete instructions regarding the offense of sexual assault by causing bodily harm.

A military judge is required to instruct on the elements of each charged offense before the members and to provide "[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given." R.C.M. 920(e)(1)&(7); *United States v. Bailey*, 77 M.J. 11, 13–14 (C.A.A.F. 2017). But when an accused fails to object to an instruction or to request an instruction, we review for plain error. *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017). To prevail, an appellant must demonstrate all three prongs of the plain error test: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *Id*. at 230. Regarding the second prong, the error must be "so obvious in the context of the entire trial that the military judge should be faulted for taking no action even without an objection." *United States v. Gomez*, 76 M.J. 76, 81 (C.A.A.F. 2017) (internal quotation marks and citations omitted).

The military judge explained to the members that one of the elements of the offense of sexual assault by causing bodily harm was a lack of consent and provided the following definitions:

> Consent means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force or placing another person in fear does not constitute consent. . . .
>
> . . . Consent, lack of consent or withdrawal of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent, withdrew consent, or whether a person did not resist or cease to resist only because of another person's actions.

(R. at 1291–1292.)

The military judge emphasized, "The government has the burden to prove beyond a reasonable doubt that consent to the physical act did not exist." Finally, he instructed them:

> You heard testimony from [MDBC] that she did not consent to the sexual act alleged in Charge 2. In other words, that she was subject to bodily harm. You also heard testimony indicating that she feared the accused and said words of apparent consent due to this fear. Should you credit this testimony, it may only be used to determine the credibility of her in court testimony concerning her lack of consent and bodily harm.

(R. at 1298.)

While lodging no objection to these instructions or requesting alternative or additional instructions to them at trial, Appellant now asserts that the military judge erred by failing to also instruct the members that "'[t]hreatening or placing a person in fear' means a communication or action that is of sufficient consequence to cause a reasonable fear that non-compliance will result in the alleged victim or another person being subjected to the wrongful action contemplated by the communication or action." (Appellant's Brief at 14 (quoting *Military Judges' Benchbook*, Dep't of the Army Pam. 27-9 at 574 (10 Sep. 2014)).)

Appellant has failed to show plain or obvious error. First, the military judge's instructions were verbatim from the statutory definition of "consent." *See* Article 120(g)(8)(A)&(C), UCMJ. This statutory definition nowhere expresses that fear causing a lack of verbal or physical resistance or submission must be reasonable. Absent caselaw requiring otherwise, it is difficult to fault the military judge for reciting statutory definitions verbatim.

Second, the added language Appellant now urges is from the statutory definition of "threatening or placing that other person in fear." Article 120(g)(7), UCMJ. This is the exact phrase used in Article 120(b)(A) prohibiting sexual assault upon another person by "threatening or placing that other person in fear." This definition thus plainly applies to sexual assault by threatening or placing another in fear. That, however, is not the theory under which Appellant was convicted. It is far from plain that the definition should also apply to the definition of consent when it says, "Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent." Article 120(g)(8)(A), UCMJ. In fact, the omission of a reasonableness-of-fear requirement from the definition of "consent" when Congress explicitly included it elsewhere only undercuts Appellant's position.

The military judge's instructions as a whole made clear that the members were required to find a lack of consent to convict Appellant of sexual assault by bodily harm and he provided appropriate definitions. We find no plain error.

*Ineffective Assistance of Counsel*

We turn to Appellant's claim that his counsel were ineffective for not objecting to the instructions on consent or offering one of his own.

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar,* 74 M.J. 364, 379 (C.A.A.F. 2015). Appellant has "a high bar" to prevail on such a claim. *Id.* at 371. He must show: (1) that his counsel's performance was deficient, that is, fell below an objective standard of reasonableness; and, (2) that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984)).

An appellant must overcome a strong presumption that a counsel's conduct "falls within the wide range of reasonable professional assistance." *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987). This presumption "is rebutted by a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *United States v. Davis,* 60

M.J. 469, 473 (C.A.A.F.2005) (citation omitted). "[S]econd-guessing, sweeping generalizations, and hindsight will not suffice." *Id.*

Even when there is deficient performance, it must be so prejudicial "as to indicate a denial of a fair trial or a trial whose result is unreliable." *Davis,* 60 M.J. at 473 (citation omitted). The appellant must show that but for the deficient performance, there is a reasonable probability that the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

Given our analysis of the purported instructional error, we readily conclude that Appellant has failed to demonstrate either deficient performance by his counsel or prejudice— that is, a reasonable probability that objecting to the military judge's instructions or requesting one would have changed the outcome. We thus find no ineffective assistance of counsel.

*Evidence of Fear*

Lastly, we address Appellant's assertion that the military judge erred by allowing evidence of uncharged misconduct—specifically, MDBC's testimony about Appellant's actions that she reported placed her in fear. Having found it proper to instruct members that "[l]ack of verbal or physical resistance or submission resulting from the use of force, threat of force or placing another person in fear does not constitute consent," we conclude that this testimony was admissible.

Ordinarily, we review a military judge's decision to admit evidence for an abuse of discretion, only overturning if the decision was "'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. Solomon,* 72 M.J. 176, 179 (C.A.A.F. 2013) (quoting *United States v. White,* 69 M.J. 236, 239 (C.A.A.F. 2010)). But we give less deference to a military judge who fails to articulate balancing of the evidence under M.R.E. 403 on the record and no deference to a military judge who fails to conduct M.R.E. 403 balancing altogether. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

M.R.E. 404(b) "permits evidence of 'other crimes, wrongs, or acts' to prove facts other than a person's character, such as 'intent, knowledge, or absence of mistake or accident.'"

*United States v. Tyndale,* 56 M.J. 209, 212 (C.A.A.F. 2001) (emphasis omitted).  To determine admissibility of evidence under M.R.E. 404(b), we apply the three-part *Reynolds* test:

1.  The evidence must reasonably support a finding that Appellant committed the alleged acts;

2.  A fact of consequence must be made more or less probable by the existence of the evidence;

3.  The evidence's probative value must not be substantially outweighed by the danger of unfair prejudice.

*United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989).

Following voir dire but prior to the presentation of evidence, the trial defense counsel moved to exclude any evidence of fear MDBC allegedly experienced that resulted in her "relenting" to sex with Appellant.  (Appellate Ex. XXI at 2.)  Trial defense counsel later specified that he objected to MDBC's expected testimony that she said "just take me" because Appellant had threatened her hours before; there were guns in the house; he was bigger than she was; and there had been violence in the past.  (R. at 2529–33.)  Although not initially citing M.R.E. 404(b), the defense argued this evidence was not relevant to the sexual assault by causing bodily harm theory of liability as charged but would instead invite the members to convict Appellant of the uncharged theory of sexual assault by threatening or placing another in fear.

The military judge denied the motion to exclude, but directed that the government was not to elicit the "just take me" statement, that the defense could cross-examine her with the statement, but that the government could then elicit testimony of fear in its redirect examination. During redirect testimony of MDBC, trial defense counsel again objected to testimony about why she was afraid of Appellant, this time explicitly citing M.R.E. 404(b).  After considerable dialogue, the military judge overruled the objection.  (R. at 228.)  Aside from a brief mention of not wanting to confuse the members, there was no mention of the *Reynolds* test or balancing under M.R.E. 403.  Although we are confident that the military judge was mindful of the limits under M.R.E. 403, we will treat this as if he did not conduct balancing of the evidence and accord his ruling no deference.  *Manns*, 54 M.J. at 166.

Still, even according no deference, we find that the evidence met each prong of the *Reynolds* test:

1.   Under the "low" standard for the first prong, *United States v. Thompson,* 63 M.J. 228, 230 (C.A.A.F. 2006), MDBC's testimony was sufficient to reasonably support a finding that Appellant committed the alleged acts.

2.   It is on the second prong—that a fact of consequence must be made more or less probable by the existence of the evidence—that the litigants and military judge focused below. The defense's assertion was, essentially, that because the government had chosen to plead the case as sexual assault by causing bodily harm, evidence of fear was irrelevant and instead would invite the members to use this evidence to convict Appellant on the uncharged theory of sexual assault by threatening or placing in fear.

We disagree.  The defense's argument again relies on the premise that the "just take me" comment provided conclusive proof that MDBC actually consented to the sexual act—thus, any evidence of fear could only pertain to the uncharged theory of sexual assault by threatening or placing another in fear.  This, as we have discussed, is a faulty premise.  While the defense justifiably urged the inference that the comment constituted consent, the members, in drawing its own inferences from the evidence, were entitled to consider "[a]ll the surrounding circumstances" to determine whether MDBC "gave consent, or whether [she] did not resist or ceased to resist only because of another person's actions."  Article 120(g)(8)(C), UCMJ.  Evidence of fear can indeed be relevant to a bodily harm theory of sexual assault.  Not only can it put words and actions into context, but it can assist the members in assessing whether MDBC's words and actions constituted actual consent, as posited by the defense, or a mere "[l]ack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear," which "does not constitute consent."  Article 120(g)(8)(A), UCMJ.

Here, in effect, the defense wanted to elicit the "just take me" statement without allowing MDBC to explain the context and why she made the statement.  The evidence in question, however, made it more probable that her statement was mere submission out of fear than actual consent.  It was thus probative.

3.   Finally, the evidence's probative value was not substantially outweighed by the danger of unfair prejudice.  It was highly probative; indeed, the members would have been left with only a partial picture without it.  Further, the military judge took appropriate steps to avoid unfair prejudice, including disallowing extrinsic evidence, requiring the government to elicit the evidence only during redirect examination after MDBC's credibility had been attacked, and instructing the members that the evidence could "only be used to determine the credibility of her in court testimony concerning her lack of consent and bodily harm."  (R. at 1298.)

The evidence thus met all three prongs of the *Reynolds* test and was properly admissible.  Having considered all of Appellant's assertions of error regarding his conviction for sexual assault, we find no prejudicial error.


**Decision**


We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved.   Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge JUDGE concur.



For the Court,


Sarah P. Valdes
Clerk of the Court