# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Jerry W. CLIFFT
### Gunner's Mate Third Class (E-4), U.S. Coast Guard
Petitioner

## United States
Real Party in Interest

## Misc. Docket No. 001-24

## 14 August 2024

Review of Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis

| | |
|---|---|
| Military Judges: | CDR Cassie A. Kitchen, USCG |
| | CAPT Gary E. Felicetti, USCG |
| Appellate Defense Counsel: | Ms. Bethany L. Payton-O'Brien, Esq. |
| | LCDR Jennifer S. Saviano, USCG |
| Appellate Government Counsel: | LT Elizabeth M. Ulan, USCG |

## BEFORE
## McCLELLAND, JUDGE & BRUBAKER
Appellate Military Judges

BRUBAKER, Judge:

Petitioner seeks extraordinary relief in the form of a writ of error coram nobis setting aside his 2016 conviction due to alleged interjection of extraneous prejudicial information into the panel members' deliberations. We conclude he does not meet the stringent requirements for this extraordinary relief and deny his petition.

## Background

In 2016, a general court-martial of members with enlisted representation convicted Petitioner, contrary to his pleas, of false official statement, sexual assault, and two specifications of assault and battery in violation of Articles 107, 120, and 128, Uniform Code of Military Justice (UCMJ). He was sentenced to confinement for four years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge, which the convening authority approved.

In 2018, we affirmed the findings and sentence. *United States v. Clifft*, 77 M.J. 712, 723–24 (C.G. Ct. Crim. App. 2018). After further review was denied, *United States v. Clifft*, 78 M.J. 55 (C.A.A.F. 2018), the proceedings became final. Article 76, UCMJ.

In 2023, Petitioner contacted a former member of his court-martial panel, now-retired Lieutenant Commander (LCDR) WK. After initial hesitation, LCDR WK responded. Subsequently, Petitioner's counsel interviewed LCDR WK. According to a paralegal who took notes of the interview, LCDR WK said that during the trial, the members were in a deliberation room that shared a "paper thin" wall with a witness room. Petitioner's Mot. to Attach, Ex. (2) at 2. After the putative victim testified, the court took a recess. While in the deliberation room, LCDR WK could hear the putative victim "bawling and crying," describing it "as unadulterated pure emotional crying, but he could hear no specific phrases from her." *Id*. He also could hear her victim advocate "shushing her, telling her she did her part, and it was ok." *Id.* Concerned this could influence the members, LCDR WK decided to move the panel to a larger room that had initially been used during the panel selection process. He informed the bailiff of this, but it appears that neither the military judge nor counsel were informed of the reasons for the move.

Although LCDR WK initially indicated a willingness to sign an affidavit, subsequent attempts to get him to sign one were unsuccessful. In lieu of an affidavit from LCDR WK, Petitioner moved to attach an affidavit from the paralegal who took notes during the interview, which we granted.

**Law**

Military courts have the authority to issue writs of error coram nobis "to protect the integrity of their dispositions and processes by granting relief from final judgments in extraordinary cases when it is shown that there were fundamental flaws in the proceedings leading to their issuance." *United States v. Denedo*, 556 U.S. 904, 916 (2009). Issuance of such a writ, however, "is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). It is used only for "extraordinary" cases presenting "circumstances compelling such action to achieve justice." *United States v. Morgan*,

346 U.S. 502, 511 (1954). Because "judgment finality is not to be lightly cast aside[,] . . . courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases." *Denedo*, 556 U.S. at 916.

We determine whether a petitioner is entitled to coram nobis relief using a two-tiered approach. First, the petitioner has the burden of establishing six threshold requirements:

> (1) the alleged error is of the most fundamental character; (2) no remedy other than coram nobis is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008), *aff'd and remanded*, 556 U.S. 904 (2009).

Second, if the petitioner satisfies this threshold burden, we then evaluate the substance of the claim under the standards applicable to the issues raised, resorting to appellate fact-finding as needed. *Id.*; *Chapman v. United States*, 75 M.J. 598, 601 (A.F. Ct. Crim. App. 2016); Art. 66(f)(3), UCMJ; *United States v. Ginn*, 47 M.J. 236, 242 (C.A.A.F. 1997); *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967). At this phase, "[i]t is presumed the proceedings were correct and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512.

## Analysis

At the outset, we consider the Government's contention that facts asserted by Petitioner about extraneous prejudicial information being brought to the members' attention is not properly before the Court because (1) the paralegal attesting to the interview of LCDR WK lacks personal knowledge of what happened during the trial, and (2) the offered evidence lacks the indicia of reliability that a sworn declaration by LCDR WK himself would have. These are both valid points. But before weighing the sufficiency of evidence to decide the merits of the petition, we must answer the preliminary question of whether Petitioner has made a threshold showing that such an evaluation of the substance of the alleged error is justified. To the extent the rules of

evidence apply to appellate decision-making, we are not bound by them in determining this preliminary question. *See* Military Rule of Evidence 104(a).

Although LCDR WK never signed an affidavit as requested, the paralegal's affidavit offering evidence of what he related to an officer of the Court about potential extraneous prejudicial information brought to the members' attention is relevant to our determination of whether Petitioner has established the threshold requirements and, if so, whether we should order further appellate inquiry. This could include, for example, a fact-finding hearing where LCDR WK and other former members could be summoned to testify. Art. 66(f)(3), UCMJ; *DuBay*, 17 C.M.A. 147, 37 C.M.R. 411. We thus adhere to our decision to grant the motion to attach, but we consider the affidavit for the limited purpose of assessing whether the information about the alleged error satisfies the threshold requirements for further inquiry.

That said, we conclude that it does not. Even assuming the information is true and that all members heard the purported victim's out-of-court emotional outburst, Petitioner fails to satisfy the first prong of his threshold burden—that the error is of the most fundamental character—for two reasons: (1) Under binding Supreme Court precedent, alleged juror bias based on exposure to extraneous information is categorically not fundamental for coram nobis purposes; and (2) Even to the extent not categorically excluded, the specific error alleged here does not rise to the level of a fundamental error.

*Alleged Error is Categorically not Fundamental*

In *United States v. Mayer*, 235 U.S. 55 (1914), the United States Supreme Court considered a district court ruling granting a writ of error and new trial. The district court found that the defendant was deprived of a trial by an impartial jury because, as was unknown to the defense and could not have been discovered earlier by reasonable diligence:

> one of the jurors at the time of his selection entertained a bias against the defendant, resulting from the juror's observations of the conduct of the defendant and other corporate officers in relation to the production of certain corporate records before a grand jury of which he had been a member, the juror having concealed his bias on his examination on the *voir dire* for the purpose of securing the jury fees, and the events of the trial having been such as to strengthen and confirm this bias.

*Id.* at 57.

Under the rules then in place, once a district court's term expired, it generally lacked jurisdiction to set aside or alter its final judgment. *Id.* at 67. There were, however, "certain exceptions" to this, one of which was, potentially, a writ of error coram nobis. *Id.* at 67–68. After discussing the historic use of the writ, the Court declined to decide whether it was available in present-day federal courts because, it held, even if it did, the writ was unavailing in that case. *Id.* at 68–69. The authority to entertain petitions for coram nobis, it explained, extends only to errors "of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid." *Id.* at 69. It does not extend to "cases of prejudicial misconduct in the course of the trial, *the misbehavior or partiality of jurors*, and newly discovered evidence . . . ." *Id.* (emphasis added). The Court concluded that the district court therefore lacked the authority to entertain the application for relief. *Id.* at 70.

Nothing since *Mayer* has superseded its holding that coram nobis does not extend to alleged juror bias due to exposure to extraneous information. In fact, the Supreme Court later cited *Mayers* as good law on its way to holding that federal courts have the authority to issue writs of error coram nobis as long as the error is "of the most fundamental character." *Morgan*, 346 U.S. at 511–12 (quoting *Mayer*, 235 U.S. at 69). Because, unlike *Mayer*, the error at issue in *Morgan*—lack of representation by counsel without a knowing and intelligent waiver—was of the most fundamental character, the accused was entitled to have the district court consider whether his conviction was invalid. *Id.* at 512–13.

More recently, the United States Court of Appeals for the Eleventh Circuit relied on *Mayer* to hold that coram nobis is not an available remedy for newly discovered evidence that jurors in a criminal trial considered extrinsic evidence. *United States v. Mills*, 221 F.3d 1201, 1202–04 (11th Cir. 2000). The court rebuffed a challenge to the applicability and continued vitality of *Mayer*, explaining, "Post-*Morgan* decisions by the Supreme Court, the Fifth Circuit, and the Eleventh Circuit have treated *Mayer* as the source of the controlling rule on the availability of coram nobis relief." *Id.* at 1204–05. It concluded that "the argument that allegations of jury impartiality should be cognizable on coram nobis as error of the most

fundamental character may be compelling, but it is not the law." *Id.* at 1205 (citing *Mayer,* 235 U.S. at 69).

We agree. *Mayer* is both binding and applicable. Under it, Petitioner's assertion is not a cognizable basis for coram nobis.

*Specific Alleged Error is not Fundamental*

Besides the alleged error not being of the most fundamental character categorically, the specific error alleged in this case fails to qualify as fundamental. At worst, the error alleged is that all members heard an out-of-court emotional outburst by the putative victim after she testified against Petitioner. Because the record demonstrates she was emotional during her testimony, the only "new" information the members were exposed to was that she was also emotional off the stand (and likely more so). We acknowledge Petitioner's point that this could, in theory, lead to added feelings of sympathy toward the putative victim or for members to place more credence in her testimony. This, however, is not an error that "render[s] the proceeding itself irregular and invalid." *Mayer*, 235 U.S. at 69. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The alleged error here is considerably more benign than a juror concealing that he already knew facts about the case based on prior participation in a grand jury, *Mayer*, 235 U.S. at 57, or the foreman of a jury sharing with other jurors unfavorable information about the defendants that had not been introduced at trial, *Mills*, 221 F.2d at 1203. Yet, as discussed, neither of those was deemed fundamental for purposes of coram nobis. More so here. Despite the members' alleged exposure to the putative victim's emotional outburst, we can presume the members followed the military judge's instruction to "consider only the evidence presented in open court" and to "impartially resolve the ultimate issue of the guilt or innocence of the accused in accordance with the law, the evidence admitted in open court and your own conscience." R. at 1302; *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000).

Accordingly, we conclude that Petitioner fails to meet the threshold requirement of showing that the alleged error is of the most fundamental character.

### Decision

Petitioner's petition for extraordinary relief in the form of a writ of error coram nobis is DENIED.

Chief Judge McCLELLAND and Judge JUDGE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court