# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**

v.

**Private E2 MATTHEW L. COE**
**United States Army, Appellant**

ARMY 20220052

Headquarters, U.S. Army Maneuver Center of Excellence
Trevor I. Barna, Military Judge
Colonel Javier E. Rivera, Staff Judge Advocate

For Appellant: Lieutenant Colonel Dale C. McFeatters, JA; Major Joyce C. Liu, JA; Captain Andrew R. Britt (on brief); Colonel Michael C. Friess, JA; Lieutenant Colonel Dale C. McFeatters, JA; Major Bryan A. Osterhage, JA; Captain Andrew R. Britt (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Pamela L. Jones, JA; Lieutenant Colonel Anthony O. Pottinger, JA (on brief).

1 February 2024

---------------------------------------------------------------
OPINION OF THE COURT ON RECONSIDERATION
---------------------------------------------------------------

ARGUELLES, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120(b)(2)(A), Uniform Code of Military Justice, 10 U.S.C. §§ 920(b) (2020) [UCMJ]. The military judge sentenced appellant to be dishonorably discharged, reduced to the grade of E-1, and confined for twenty-four months. The convening authority took no action on the sentence.

Appellant requests reconsideration of our decision affirming the findings and sentence. Upon reconsideration, we again affirm the findings and sentence, and additionally clarify three distinct points: (1) because appellant was both charged and

---

[1] Judge ARGUELLES decided this case while on active duty.

convicted of a violation of Article 120(b)(2)(A), sexual assault without the consent of the other person, there was no due process violation in the exercise of the government's charging discretion; (2) in considering whether appellant's due process rights were violated because the evidence was factually insufficient to support his conviction, we can consider evidence that the victim was incapable of consenting due to impairment by intoxication as *circumstantial* evidence that she did not actually consent; and (3) after reviewing the entire record, we find the evidence in this case was factually sufficient to support appellant's conviction.

## BACKGROUND

While in airborne training, the victim, appellant, and several other soldiers decided to spend an afternoon at the river. On the way to the river, they stopped to buy brandy. Almost immediately after arriving at the river, and before the heavy drinking started, appellant and the victim had consensual sex in a wooded area away from the group. Over the course of the afternoon, the victim and a few (but not all) of the soldiers drank the brandy straight from the bottle, and the victim had sex with at least one of the other male soldiers and one of the female soldiers. When last observed by the others at the end of the day, the victim, who appeared to be very intoxicated, was having sex with another soldier in the presence of appellant. Although there were no witnesses to the act, appellant admitted to having sex with the victim for a second and final time at the end of the day, which formed the basis for the charge in this case.

The next time witnesses observed the victim, appellant and another soldier were helping her put her bathing suit bottoms back on and cleaning her off in the river. Multiple witnesses testified that the victim had trouble walking and appeared to be very intoxicated at that point. Her friends flagged down two non-affiliated soldiers who were in a car by the river. These soldiers helped carry the victim back to their car, where she sat for a while in the air conditioning and drank water. While in the car, the victim borrowed a friend's phone and made several attempts to call a male soldier. Although several witnesses testified that the victim and the soldier she tried to call in the car were in a serious relationship, the victim claimed that they were just friends.

At some point, one of the male soldiers in the group (not appellant) directed the driver of the car to take the victim to a hotel. Concerned for her safety, the driver instead took the victim back to her barracks, where other soldiers say she showed up disheveled and intoxicated, with her clothes dirty, scratches on her back and legs, and twigs and dirt in her hair. There was also evidence that while at the barracks, the victim attempted to string up a hair dryer cord for the purpose of hanging herself.

The victim testified at trial that after the drinking games started she became highly intoxicated and "blacked out . . . in and out of conscience." When asked the next thing she remembered, the victim testified:

> V: Next thing I remember is looking up with my clothes off, looking at the *defendant* saying "I do not want this," and then I blacked out again.

> TC: Who was – what was happening at the time?

> V: At the time, [another male soldier] was in front of me, sir, and then [appellant] was off to the side penetrating [another female soldier].

> TC: What's the next thing you remember?

> V: Next thing I remember is being in a vehicle.

As noted above, there is no dispute that appellant had sex with the victim after she stated, "I don't want this" while looking at him.

A sexual assault forensic nurse also testified that the victim told her "that she remembers her clothes coming off, she doesn't remember who took them off, and she told them 'no stop,' and she looked into their eyes and they saw that she was scared and then she blacked out." Although the nurse did not clarify who the "them" was, this evidence tracks the victim's testimony about the statements she made to appellant and the other male soldier when she woke up with her clothes off, while appellant was having sex with another female.

The evidence at trial also revealed that appellant made several admissions: (1) he told the Army Criminal Investigation Command (CID) agent that he did not look at the victim when he had sex with her the second time, because "she was super drunk and it was wrong;" (2) when asked by the CID agent if the victim "was coherent enough to give consent for sexual acts," appellant responded "No;" (3) another soldier testified that on the same night after the assault, appellant was "downhearted" and "emotionally drained" and that he told her he "f—d up" by not waiting to have sex with the victim "until they were sober;" and, (4) in a pretext text message stating that the victim was too drunk to consent, appellant replied "Yes she was. She was wasted."

## LAW AND DISCUSSION

### A. No Due Process Violation in Government's Charging Decision

In *United States v. Tunstall*, the Court of Appeals for the Armed Forces (C.A.A.F.) reiterated that "[t]he due process principle of fair notice mandates that

'an accused has a right to know what offense and under what legal theory' he will be convicted." 72 M.J. 191, 196 (C.A.A.F. 2013), citing *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2010). Likewise, in *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011), the CAAF held "the Due Process Clause of the Fifth Amendment also does not permit convicting an accused of an offense with which he has not been charged."

Appellant, who was charged with one specification of violating Article 120(b)(2)(A), sexual assault without the consent of the other person, now alleges that because the government's theory of the case, and the bulk of the evidence, pertained to the victim's level of intoxication, the government's charging decision violated his due process rights. Specifically, appellant asserts that it was error for the government to charge him under one theory of liability for sexual assault (without consent), but to then convict him under a different, non-charged theory of sexual assault (upon a person who is incapable of consenting due to impairment by intoxicant).

There is a difference, however, between: (1) alleging a due process violation based on being convicted of an offense different than what was charged; and (2) asserting a violation of due process because the evidence adduced at trial was factually insufficient to support the conviction. Applied in this case, given the military judge's finding that appellant was guilty of a violation of Article 120(b)(2)(A), the offense that was charged, appellant's contention that he was "convicted" under a different theory of sexual assault is simply without merit. Put another way, because appellant was informed of the sexual offense charged and the applicable legal theory – without consent – and then convicted of that offense, his due process challenge to the government's charging decision must fail. *Cf. United States v. Ricketts*, 1 M.J. 78, 82 (C.M.A. 1975) ("[I]t must therefore be presumed . . . that the court members had reached a proper verdict in which the appellant was only found guilty [of the crimes for which he was charged.]").

### B. Evidence of the Inability to Consent May be Considered as Circumstantial Evidence of Affirmative Lack of Consent

Given that the government elected to charge this case under Article 120(b)(2)(A), it was required to prove that appellant committed a sexual assault on the victim without her consent. In pertinent part, Article 120 defines "consent" as "a freely given agreement to the conduct at issue by a competent person," and expressly provides that "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." *Manual for Courts-Martial*, pt. IV, ¶60.a(g)(7)(A)/(C) (2019).

We start by acknowledging that there is a conceptual difference between affirmatively proving that a victim did not consent, and proving facts that show her legal inability to consent. *See United States v. Weiser*, 80 M.J. 635, 640-41 (C.G.

Ct. Crim. App. 2020) (holding that the government's affirmative responsibility to prove that the victim did not, in fact, consent is distinct from the government's burden to prove a victim's legal inability to consent), *citing United States v. Riggins*, 75 M.J. 78, 84 (C.A.A.F. 2016). On the other hand, and as is the case with any disputed factual issue, the government may prove a victim's lack of consent with either direct or circumstantial evidence. *See, e.g. United States v. Flores*, 82 M.J. 737, 743 (C.G. Ct. Crim. App. 2022) (holding that Article 120(g)(7)(c) "expressly permits a trier of fact to conclude not only direct evidence of lack of consent – such as a putative victim's own account – but circumstantial evidence as well"); *United States v. Salamanca*, 2022 CCA LEXIS 635 at *22 (A.F. Ct. Crim. App. 4 Nov. 2022) ("The Government was permitted to use circumstantial evidence to prove KB's lack of consent, and a rational factfinder could conclude from this evidence that she did not."); *United States v. Roe*, ARMY 20200144, 2022 CCA LEXIS 248 at *29 (Army Ct. Crim. App. 27 April 2022), (dissent) ("However, the government bears the burden of providing affirmative evidence, either direct or circumstantial, of the victim's lack of consent.").

As such, in light of Article 120(g)(7)(C)'s explicit prescription that we are to consider *all* the surrounding circumstances in determining whether a person gave consent, we also agree with our colleagues in *Roe* that "[b]y way of logic, if the government proves that a victim is asleep or unconscious and therefore legally incapable of consenting at the time of a sexual act, that is strong evidence that the victim did not, in fact, consent." *Id.* at *14. Not surprisingly, based on our research it appears that every other service-level appellate court to consider this issue has reached the same conclusion.

For example, in *Weiser,* the Coast Guard Court of Criminal Appeals held that "the combination of [the victim's] consumption of alcohol, level of intoxication, and fatigue were not intended to prove incapacity, but were, instead, relevant 'surrounding circumstances' for the members to consider in deciding whether [the victim] actually consented." 80 M.J. at 642. Likewise, in *United States v. Williams*, the Air Force Court of Criminal Appeals squarely held that:

> We see no reason why the Government may not use evidence of inability to consent—ordinarily the focal point of a prosecution under Article 120(b)(3), UCMJ—as circumstantial evidence of the lack of actual consent in a prosecution under Article 120(b)(1)(B), UCMJ. Therefore, we conclude evidence tending to show a person *could not* consent to the conduct at issue may be considered as part of the surrounding circumstances in assessing whether a person *did not* consent.

2021 CCA LEXIS 109 at *57 (A.F. Ct. Crim. App. 12 Mar. 2021) (emphasis in original). Likewise, and again directly on point, in *United States v. Flores,* the Coast Guard Court of Appeal held:

First, presenting evidence of the effects of alcohol on a putative victim is permissible in a "did not consent" case and does not, by itself, transform it into a "could not consent" case—as long as we can be satisfied that the Government prosecuted the case under a "did not consent" theory. In determining whether a putative victim actually consented, the trier of fact is entitled to consider "[a]*ll* the surrounding circumstances," including evidence of alcohol consumption.

82 M.J. 737, 744 (C.G. Ct. Crim. App. 2022). *See also United States v. Gomez*, 2018 CCA LEXIS 167 at *11-12 (N.M. Ct. Crim. App. 4 Apr 2018) (holding that military judge correctly applied the proscription of Article 120(g)(7)(C) in ruling that "evidence that [victim] was drinking is part of those surrounding circumstances and should be allowed in on the use of consent"); *United States v. Coovert*, 2021 CCA LEXIS 355 at *29-30 (A.F. Ct. Crim. App. 21 July 2021) (same); *United States v. Johnson*, 2023 CCA LEXIS 330 at *34-35 (A.F. Ct. Crim. App. 9 Aug. 2023) ("We see no reason why the Government may not use evidence that GH was asleep— ordinarily the focal point of a prosecution under the theory of while asleep— as circumstantial evidence of the lack of actual consent in a prosecution under a theory of without consent.").

Finally, and for all of the same reasons, just because the fact pattern involves an allegedly intoxicated victim, the government does not violate appellant's due process rights by exercising its discretion to charge him under an Article 120(b)(2)(A) lack of consent theory. Rather, and as noted above, if the government does in fact choose to charge such a case under Article 120(b)(2)(A), it is required to affirmatively prove, by direct and/or circumstantial evidence, that appellant committed a sexual assault on the victim without her consent.

### C. The Evidence in this Case Was Factually Sufficient to Support the Conviction

Article 66(d)(1)(B), as amended by the National Defense Authorization Act for Fiscal Year 2021 provides:

(B) FACTUAL SUFFICIENCY REVIEW

(i) In an appeal of a finding of guilty under subsection (b), the Court [of Criminal Appeals] may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to-

(1) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(2) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

Pub. L. No. 116-283, § 542(b), 134 Stat. 3611-12. The amendment to Article 66(d)(1)(B) applies only to courts-martial, as here, where every finding of guilty in the Entry of Judgment is for an offense that occurred on or after 1 January 2021. *Id.* at 3612.

With respect to this case, in addition to the victim's intoxication level, which as noted above we may consider as circumstantial evidence, there is a multitude of additional evidence, both direct and circumstantial, that the victim did not actually consent. Among other things, the victim testified that she told appellant, "I don't want this" before they had sex for the second time. She also told the sexual assault nurse that she told "them" "no, stop."

Likewise, although they pertain primarily to the victim's level of intoxication, appellant's multiple admissions nevertheless constitute circumstantial evidence that he knew the victim did not willingly consent to the charged sex act. Among other things: (1) he told the CID agent he did not look at the victim when he had sex with her the second time, because "she was super drunk and it was wrong;" (2) when asked by the CID agent if the victim "was coherent enough to give consent for sexual acts," appellant responded "No;" (3) another soldier testified that on the same night after the assault, appellant was "downhearted" and "emotionally drained," and that he told her he "f—d up" by not waiting to have sex with the victim "until they were sober;" and, (4) in a pretext text message stating that the victim was too drunk to consent, appellant replied "Yes she was. She was wasted." *Cf. United States v. Smith*, 83 M.J. 350 (C.A.A.F. 2023) ("[A]lthough Appellant told AFOSI that ███ was an active, willing participant in the sexual activity, grinding on him and making out with him until he pulled away, he also admitted that he knew it was wrong to engage in sexual activity with her because she was drunk.").

Moreover, we note that even as amended, the most recent version of Article 66(d) still requires that in weighing the evidence we give "appropriate deference to the fact that the trial court saw and heard the witnesses and evidence." *See also United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015), *aff'd on other*

*grounds* 76 M.J. 224 (C.A.A.F. 2017) (holding that "the degree to which we 'recognize' or give deference to the trial court's ability to see and hear the witnesses will often depend on the degree to which the credibility of the witness is at issue"); *United States v. Crews*, ARMY 20130766, 2016 CCA LEXIS 127 at *11-12 (Army Ct. Crim. App. 29 Feb. 2019 (mem. op.) ("The deference given to the trial court's ability to see and hear the witnesses and evidence – or "recogni[tion] as phrased in Article 66, UCMJ - reflects an appreciation that much is lost when the testimony of the live witnesses is converted into the plain text of a trial transcript . . . . [the factfinder] hears not only a witness's answer, but may also *observe* the witness as he or she responds.") (emphasis in original).

As such, we emphasize that our role in a factual sufficiency review is *not* to substitute ourselves for the factfinder and decide what verdict we would have rendered. To the contrary, Article 66(b)(ii) expressly cabins our discretion by requiring that we give deference to both: (1) the fact that the factfinder saw and heard the witnesses and other evidence; and (2) the military judge's findings of fact.

After reviewing the entire record, to include the evidence supporting the guilty verdict as set forth immediately above, and giving deference to both: (1) the military judge who was able to see and hear each witness, including the victim, as they testified; and (2) the military judge's implicit finding of fact that the victim did not affirmatively consent, we respectfully disagree with our dissenting colleagues that the finding of guilt was "against the weight of the evidence."

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Chief Judge SMAWLEY, Senior Judge PENLAND, Senior Judge FLEMING, Judge HAYES, and Judge PARKER concur;

WALKER, Senior Judge, joined by MORRIS, Judge, and POND, Judge, dissenting, in part:

I agree with the majority that there was no due process violation in the government's charging decision and in the holding that evidence of an inability to consent may be considered as circumstantial evidence of a lack of consent. Where I part ways with the majority is in the holding that the evidence in this case was factually sufficient. I find the charged offense of sexual assault without consent in violation of Article 120(b)(2)(A), UCMJ, both legally and factually insufficient and would set aside appellant's finding of guilty and sentence.

8

This court is obligated to review both the legal and factual sufficiency of each court-martial conviction and only affirm those findings of guilty that are correct in law and fact. Article 66(d)(1)(A), UCMJ. "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (cleaned up). As the majority properly recognized, the test for factual sufficiency, upon appellant's specific showing of deficiency in proof, is whether "the Court is clearly convinced that the finding of guilty was against the weight of the evidence." Article 66(d)(1)(B)(iii). For factual sufficiency, this court applies "neither a presumption of innocence nor a presumption of guilt" but must "make [its] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Wheeler*, 76 M.J. 564, 568 (C.A.A.F. 2017) (cleaned up). Citing *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The degree of deference this court affords the trial court for having seen and heard the witnesses will typically reflect the materiality of witness credibility to the case. *United States v. Davis*, 75 M.J. 537, 546 (Army Ct. Crim. App. 2015).

The charged offense requires the government to affirmatively prove the victim *did not consent,* and the government failed to satisfy its burden on this essential element. I do not find that a rational trier of fact, even in the light most favorable to the government, could have found all the essential elements of the charged offense beyond a reasonable doubt based upon the evidence the government presented at trial. There was no dispute at trial that sexual intercourse occurred between the victim and appellant on the date charged. Appellant admitted that he engaged in sexual intercourse with the victim by penetrating her vulva with his penis late in the evening after she had consumed alcohol and exhibited signs of intoxication. Thus, the issue of contention at trial was whether the sexual intercourse occurred without consent.[2] During his statement to law enforcement, appellant explained that the victim never verbally or physically manifested a lack of consent to the sexual intercourse. He also stated that the victim never made any statements during the

---

[2] "'Consent'" means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. Submission resulting from the use of force, threat of force, or placing another person in fear also does not constitute consent. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issues does not constitute consent." Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para 3A-44-2.d, note 5 (29 Feb. 2020) [Benchbook].

9

sexual intercourse with another soldier immediately preceding his sexual intercourse with the victim. Rather, appellant admitted that she exhibited signs of intoxication, and he knew she was incapable of consenting based upon her level of intoxication. The victim testified that she had no memory of the sexual intercourse with appellant and was thus unable to provide any affirmative evidence of a lack of consent.

The government cannot rely exclusively on the victim's lack of memory due to intoxication as a proxy for satisfying its burden to prove a lack of consent, which is what occurred in this case. I concur with the majority, and sister service court opinions, that evidence of consumption of alcohol and a victim's level of intoxication may be considered by the fact-finder as part of the relevant "surrounding circumstances" in determining whether a victim actually consented. Where I part ways with the majority is on the viewpoint that evidence of an inability to consent is *strong evidence* that the victim did not, in fact, consent. *See United States v. Roe*, ARMY 20200144, 2022 CCA LEXIS 248 at *29 (Army Ct. Crim. App. 27 April 2022).

While the majority cites several sister service court cases in support of its holding that evidence of intoxication is *strong* circumstantial evidence of a lack of consent, each of those cases involved evidence of the victim's lack of consent in addition to the victim's alcohol consumption, which is absent from this case. *See Weiser*, 80 M.J. 635, 640-41 (C.G. Ct. Crim. App. 2020) (the victim testified at trial that she was intoxicated at the time of the sexual assault but recalled the sexual assault acts and testified as to her lack of consent to the sexual acts), *United States v. Flores*, 82 M.J. 737, 743 (C.G. Ct. Crim. App. 2022) (while the victim did not recall events immediately preceding the sexual assault, the victim recalled appellant performing oral sex on her and immediately removing herself from the room, and testified she was convinced she did not consent to sexual acts with appellant). In *United States v. Williams*, the government argued that appellant took advantage of the victim while she was unconscious, likely due to her alcohol consumption, and therefore she could not consent. I find that factual scenario distinguishable from a victim who is conscious and the government leverages the victim's level of intoxication and lapse in memory as the sole evidence of a lack of consent. 2021 CCA LEXIS 109 at *53-56 (A.F. Ct. Crim. App. 12 Mar. 2021).

The government bears the burden of providing affirmative evidence, either direct or circumstantial, of the victim's lack of consent. While all the surrounding circumstances must be considered by the factfinder in determining whether the government proved the essential element of the victim's lack of consent, the surrounding circumstances in this case do not support a lack of consent, but rather an *inability to consent,* which is a distinct sexual assault offense with separate and distinct elements. *United States v. Riggins*, 75 M.J. 78, 85 (C.A.A.F. 2016) (holding that assault consummated by a battery was not a lesser included offense of sexual assault and abusive sexual contact by placing in fear); *see also United States v.*

*Weiser*, 80 M.J. 635, 640-41 (C.G. Ct. Crim. App. 2021) (holding sexual assault by bodily harm requires proof "the victim did not, in fact, consent" and is distinct from the victim's "legal inability to consent"). The evidence before the factfinder was that the victim was coherent and actively participating in sexual acts with a female and then initiating sexual acts with a male openly where observers could witness the acts. Witnesses observed the victim exhibiting signs of intoxication at this point. But, those same witnesses testified the victim was actively participating in, and even initiating, sex acts and providing a freely given agreement to those sex acts through words and actions.

The victim testified that she recalled consuming alcohol and then could not recall most of the remainder of the evening. She did recall, however, a point in which she was naked and another soldier was on top of her and looking over at appellant, who was engaged in sexual intercourse with another female, and stating "I do not want this." There was no evidence of any other witness hearing or acknowledging this statement, including appellant. The next memory the victim possessed was being in a vehicle. The victim did not recall engaging in sexual intercourse with appellant after her expression of lack of consent of another Soldier engaging in sexual acts with her. The victim's lack of memory is not evidence of a lack of consent. At best, the victim's lack of memory, due to intoxication by alcohol, is circumstantial evidence of an *inability to consent.* I do not find that a victim's affirmative lack of consent to sexual intercourse with one individual supports any inference that the victim then subsequently did not consent to sexual intercourse with appellant. Just as a factfinder is not authorized to infer that consensual sexual intercourse with an individual earlier in the evening permits an inference that a victim must have consented to subsequent sexual intercourse with that same individual or even another individual. Each sexual act is separate and distinct and stands alone as to the issue of consent.

Law enforcement's interrogations of appellant focused mainly on the victim's level of intoxication and inability to consent. When questioned about whether the victim manifested any lack of consent, appellant denied the victim verbally or physically exhibited a lack of consent. At the same time, appellant also admitted the victim did not verbally or physically exhibit affirmative consent. Given the evidence elicited at trial, I do not find that a rational trier of fact could find the government met its burden of proving the element of lack of consent beyond a reasonable doubt in this case.

Further, I also find that the charged offense is factually insufficient. Even after carefully reviewing the evidence and taking into consideration that the military judge personally observed the witnesses, I am clearly convinced that the finding of guilty for sexual assault without consent was against the weight of the evidence presented in this case. I disagree with the majority that the government satisfied its burden of proving the victim's lack of consent beyond a reasonable doubt.

Specifically, I find there was neither sufficient direct nor circumstantial evidence of the victim's lack of consent to the sexual intercourse. The victim testified she had absolutely no memory of any sexual intercourse with appellant subsequent to the sexual act in which she indicated she "did not want this."

In fact, the victim has a lack of memory of several hours from the night of the charged offense. The victim testified she recalled going to the location with friends, having consensual sexual intercourse with appellant, and then consuming alcohol. The victims' only other memory from that night was a moment in time when she indicated a lack of consent to a sex act, with someone other than appellant, while appellant was engaged in sexual intercourse with another female. Even more concerning is the military judge's confusion about this point. In response to a defense statement concerning the victim's testimony, the military judge replied the victim "did testify as such. That did come up when she made eye contact with Private Coe at some point." However, the victim did not testify she made a statement directly to appellant. The victim testified only that she looked at appellant when she stated "I do not want this" but never testified she made eye contact with appellant at that moment or that he acknowledged her statement. The military judge's mistaken characterization of the victim's testimony is particularly problematic because he was also the factfinder. Sometimes, as in this case, our ability to read the verbatim transcript affords us the opportunity to detect inconsistencies missed or misinterpreted by the factfinder.

The victim testified her next memory was being in a vehicle and being taken back to her barracks room. Despite declaring that she blacked out during the approximately 15-minute period of sexual acts with appellant and two other individuals, the victim testified "she knew what happened," had "cheated on her boyfriend," and wanted to contact a male for whom she had feelings and dated briefly. On cross-examination, the victim acknowledged that she could have said "yes to the group." The government is required to prove a lack of consent temporally linked to the sexual act. In this case, the victim cannot provide any evidence of her lack of consent at the time of the sexual act. While there was evidence the victim exhibited some signs of intoxication prior to sexual intercourse with appellant, I do not find such circumstantial evidence sufficient to satisfy the government's burden of proving lack of consent beyond a reasonable doubt. Further, the victim engaged in consensual sexual acts up to the point of indicating she did not want sexual intercourse with a particular male that was not appellant. At that point, the victim was conscious, coherent, and able to verbally express a lack of consent. There is no evidence the victim continued to consume alcohol after that point, just that she cannot recall what occurred from that point until she was placed into a vehicle. Sometime in that period, appellant engaged in sexual intercourse with the victim. He admitted to law enforcement that the victim was exhibiting signs of intoxication and that he knew she was drunk but did not provide any information that the victim expressed any verbal or physical lack of consent. While verbal or

physical resistance is not required for the government to prove a lack of consent, it is evidence that can be relevant in a case in which a victim has no recollection of the sexual intercourse.

The majority places a lot of emphasis on appellant's statements to law enforcement during a prolonged and highly suggestive interrogation. Many of the statements relied upon by the majority were words initiated by the CID agent as he pressured appellant to agree with his version of events. The CID agent used highly suggestive and manipulative tactics and refused to accept appellant's denials or alternate version of the facts when appellant attempted to provide his viewpoint on what transpired. Further, the agent told appellant if he did not agree with the agent's version of events, then maybe this was not a "one time mistake" and appellant was someone "that takes advantage and preys on girls that are drunk." The majority also relied upon appellant's statements to another soldier that he should have waited to have sex with the victim and from a pretext communication about the victim's level of intoxication as evidence of his consciousness of guilt. While these statements may be relevant, they are not necessarily evidence of consciousness of guilt, but rather "[statements] from someone who knows they have acted inappropriately, but not criminally." *United States v. Prasad*, 80 M.J. 23 (C.A.A.F. 2020) (citation and internal quotations omitted). Further, it would have been difficult to ascertain when the line crossed into illegal sexual activity under these circumstances and certainly not enough to meet the government's burden of proving lack of consent beyond a reasonable doubt.

The government solely focused its case on the victim's *inability* to consent as opposed to her lack of consent from start to finish. In its opening statement, the government started by describing appellant penetrating the victim "as she lay there severely intoxicated on the banks of the Chattahoochee River." The focus of the testimony elicited from each witness who was at the river that day was about the victim's outward manifestations of intoxication and her *inability* to consent. The government's first piece of evidence was eliciting opinion testimony about alcohol poisoning from a Private who served as an EMT for a year prior to joining the Army. The government then presented testimony from no less than four additional witnesses who observed the victim that day and whose testimony focused on the victim's level of intoxication involving intermittent consciousness, slurred speech, vomiting, falling while attempting to walk, and emotional state. In closing argument, the government began by focusing on appellant's statements to law enforcement about his awareness of the victim's level of intoxication when he engaged in sexual intercourse with her and then proceeded to argue the testimony of witnesses who testified about their observations of the victim's outward manifestation of intoxication. The government did not use the victim's intoxication as merely a "surrounding circumstance" for the factfinder to consider as to the element of lack of consent, the government used it as the *only* circumstance of lack of consent. The government fails to satisfy its burden in doing so, and the finding of

13

guilty of sexual assault without consent is against the weight of the evidence the government presented in this case.

This court is bound by the government's decision to charge this case as a sexual assault without consent. I am convinced the finding of guilty for the theory of sexual assault, without consent, is against the weight of the evidence presented. Had the government chosen to charge this case as a sexual assault while the victim was incapable of consenting due to impairment by a drug, intoxicant, or other similar substance in violation of Article 120(b)(3)(A), UCMJ, I would find the evidence is both legally and factually sufficient under that theory of liability.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court